CASE 84—PETITION EQUITY—JUNE 24.

## Schmidt, &c. v. Mitchell, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. CORPORATIONS—MANNER OF ELECTING DIRECTORS—CUMULATIVE SYSTEM.—Under section 207, of the Kentucky Constitution, providing for the election of directors in corporations by the system of cumulative voting, stockholders are entitled to vote in the mode prevailing before the adoption of that system, if they so desire; and the election of directors by another system was legal where no stockholder claimed the right to vote his stock upon the cumulative system, or was denied the right to do so.

2. EXECUTORS—RIGHT TO VOTE STOCK—REVOCATION OF PROXY.—Until a settlement and division of an estate the executors have the power to vote the stock of their testator; and where one of the joint executors issues a proxy authorizing the vote of the stock belonging to the estate, and another one of the executors is present at the stockholders' meeting, the vote of the stock by the executor who was present, was a revocation of the proxy given by his co-executor.

3. PROXY—REVOCATION.—A proxy is always revocable, even when by its terms it may be irrevocable; and it is not essential that it should be revoked in the exact manner provided in the instrument giving the proxy.

4. DIRECTORS—FIDUCIARIES MAY BE.—Where directors in a corporation are required by law to be stockholders therein, an executor or fiduciary who has the right to vote stock as a stockholder, is eligible to election as director, although he may not own any stock in his own name.

5. DIRECTORS—EFFECT OF VOTING FOR ONE WHO IS INELIGIBLE.—One

Schmidt, &c. v. Mitchell. &c.

who held no stock in a corporation being ineligible to election as director therein, the fact that he received the highest number of votes does not entitle him to the office; but votes cast for him will not be ignored so as to elect another candidate, a director who received a minority of the votes cast, unless the stockholders who voted for him knew the facts which made him ineligible, and that those facts rendered him so.

6. PLEADING—AMENDMENT.—An amended pleading which is substantially a reiteration of the averments of the original pleading in a more elaborate form, need not be denied.

7. SPECIAL JUDGE—AFFIDAVIT FOR.—An affidavit by a party to an action under the provisions of section 968, of the Kentucky Statutes, against the judge of a court, which is based almost entirely upon hearsay, and which fails to state the facts upon which the belief that the judge will not give him a fair trial is based, is insufficient.

B. F. BUCKNER FOR APPELLANTS.

1. The election of stockholders was not held by the cumulative system as required by section 207, of the Constitution, and was consequently illegal. There having been no definite form or manner of holding the election pointed out by the articles of corporation, that section of the Constitution and the statute passed in pursuance thereof should have been followed. Hayes v. Commonwealth, 82 Penn., 518; Cook on Stockholders, sec. 609; Pierce v. Commonwealth, 104 Penn. St., 150; Cross v. W. Va. R. R., 12 S. E. Rept., 1071; (35 W. Va., 175); R. R. Company v. Georgia, 96 U. S.

2. The stock of the decedent passed to the personal reperesentatives, and they have a right to vote it, but that fact does not make them eligible as directors. In re Argus Printing Co., 1 N. D., 435; 1 Morowetz, sec. 170; Fowler v. Churchill, 11 M. & W., 323; 7 Amer. & Eng. Enc. of Law, 255.

3. Even if Gerst was ineligible Neuner was not elected because there is no proof that the persons voting for Gerst knew that he was not a stockholder, or that such fact disqualified him. Morowetz, sec. 485; In re St. Lawrence Company, 44 N. J. Law, 529; People v. Clute, 50 N. Y., 451; Dillon on Municipal Corporations, 4th Ed., sec. 196; Barnam v. Gilman, 27 Minn., 470.

4. If the executors differed as to the voting of the stock of the testator, the vote by one of them was void and did not revoke the proxy given by a co-executor. Tunis v. Hestonville R. R. Co., 149 Penn. St.

5. The affidavit was sufficient to remove the regular judge, and contained sufficient grounds under the statute. Turner's Case, 2 Met., 619; German Ins. Co. v. Landrum, 88 Ky., 438; Vance v. Field, 89 Ky., 178; Massie v. Commonwealth, 93 Ky., 588.

BYRON BACON, C. B. SEYMOUR AND ERNEST MACPHERSON ON SAME SIDE.

1. The provisions of section 207, of the Constitution, are mandatory and prohibitory as well, and the election of directors in a corporation in any other manner than by the cumulative system of voting is void; and that section applies to corporations already existing as well as to those incorporated afterwards. Cross v. W. Va. R. R., 12 S. E. Rept., 1071; Cook on Stock and Stockholders, 3d Ed., vol. 1, pp. 819, 820 and note. Greenwood v. Freight Company, 105 U. S., 20; Griffin v. Ins. Co., 3 Bush, 595; Louisville Water Co. v. Clark, 143 U. S., 14.

2. One not a stockholder in his own right was ineligible as director. Section 551, of the Kentucky Statutes.

3. If there was a vacancy caused by Gerst resigning, it could only have been filled by a majority of the legally elected board, which was not done; and as Neuner was never elected either by the stockholders or the directors to fill the vacancy, he had no right to act at all.

4. The ineligibility of a candidate who received the highest number of votes at an election does not have the effect of electing the person who received the next highest number of votes. State v. Gales, 2 Pinney, 106; Sanders v. Hayes, 13 Cal., 145; Dillon on Municipal Corporations, sec. 135; Cooley's Constitutional Limitations, 620; Naar on Elections, 163; Morowetz on Private Corporations, sec., 485; Howes v. Walker, 92 Ky., 258.

5. A preliminary injunction merely preserves matters *in statu quo*, and should not direct the restoration of property to its condition before being distributed. Southern Pacific R. R. Co. v. Oakland, &c., 58 Fed., 50.

6. Where land situated in one country is mortgaged there, and suit has been brought in the courts of that country to foreclose the mortgage, it is contrary to the rule of comity of nations for the courts of another country to actively interfere between the same litigants. Northen v. Florence Land & Public Works Co., Law Rept., 7 Chan. Div., 332; Jones v. Giddes, 1 Phil. Ch., 724; Moor v. Anglo-Italian Bank, Law Rept., 10 Chan. Div., 681.

7. There was no necessity for the appointment of a receiver; there was nothing for him to do. The property in Oregon, the bond-

Schmidt, &c. v. Mitchell, &c.

holders were entitled to the possession of under the terms of the deed of trust, and the receiver could not foreclose the mortgage. Besides this the property was already in the custody of the courts of Oregon, several suits *in rem* having already been instituted there. Day v. Postal Tel. Co., 66 Md., 54.

8. Merely the charge of mismanagement does not authorize the appointment of a receiver. Waterbury v. Merchant's Union Exp. Co., 50 Bar., 158; Neal v. Griffin, 30 Iowa, 148; Pond v. Framingham, &c. Co., 130 Mass., 194.

PINCKNEY F. GREEN and HUMPHREY & DAVIE for appellees.

1. After the former appeals herein, it must be taken as settled, that the petition herein sets out a good cause of action. Davis v. McCorkle, 14 Bush, 746.)

2. Where there are violent internal dissensions in a corporation, and two sets of officers are attempting to act, and the affairs of the company are thereby jeopardized; it is within the jurisdiction of equity to appoint a receiver to take charge of the property of the corporation until the court can ascertain which is the legal governing board, and deliver the possession to it. (Schmidt v. Mitchell, 33 Southwestern Rept., 408; Cook on Stockholders, 2d Ed., sec. 684; Beach on Receivers, sec. 87; Cooke v. Fetherstone, Law Rept., 16 Equity, 303.)

3. The fact that the property of the company, or some of it, is in a foreign State or country, does not prevent the court from appointing its receiver to take possession of it; nor in any manner limit the court's control over it. (High on Receivers, 3d Ed., secs. 44, 170; Beach on Receivers, sec. 243; Gluck on Receivers, secs. 11, 12; Chaffee v. Quidnick, 13 R. I., 442; Cole v. Cunningham, 133 U. S., 124.)

4. The court had jurisdiction to issue an injunction prohibiting any one from ousting the receiver from the possession, through his agent, of the property in the foreign State or country; although such ousting be under cover of legal process procured from another court, in such foreign country. Chaffee v. Quidnick, 13 R. I., 442; Cole v. Cunningham, 133 U. S., 124; High on Receivers, 3d Ed., sec. 164; Story's Equity Jurisprudence, secs. 899, 900.)

5. The ousting of the possession of the court's receiver, in violation of the court's injunction, although done by procuring another receiver thereof to be appointed by another court, was a contempt of the court; which the court had an inherent jurisdiction to punish, for its own protection. (Hazelrigg v. Bronaugh,

78 Ky:, 62; Beaves v. Garrard, 6 B. M., 483; Spalding v. Cunmonwealth, 88 Ky., 138; In re Tyler, 149 U. S., 181; Shields v. v Coleman, 157 U. S., 169; Chaffee v. Quidnick, 13 R. I., 442; Beach on Receivers, sec. 224; to 226; High on Receivers, 3d Ed., secs, 163 747, 750.)

6. The procuring the appointment of a receiver in Oregon, without leave of the Kentucky court, was not only a contempt of the Kentucky court, but was illegal, as a violation of an express statute in Oregon, which forbade a receiver to be appointed to take possession of the mortgaged property in the foreclosure suit. (Teal v. Walker, 111 U. S., 251; Thompson v. Sherley, 69 Fed. Rept., 484.)

7. To oust the possession of the court's receiver was a contempt of court; even if there had been no injunction against it. (High on Receivers, 3d Ed., sec. 164; Beach, sec. 243.)

8. It was also a contempt of court to violate the injunction; even if the injunction was too broad in its terms. It should have been respected, until set aside or modified by the court below, or this court. (High on Injunctions, 3d Ed., sec. 1417; Williamson's Case, 67 American Decisions 383.)

9. The contempt in this case was not a "civil contempt," but a "criminal contempt." (Williamson's Case, 67 Amer. Dec., 383; State v. Davis, 51 Northwestern, 942; In re Whitmore, 35 Pacific Rept., 525 (9 Utah, 441); Rapalje on Contempts, sec. 21; In re Murphy, 39 Wis., 286.)

10. The "inherent jurisdiction" of a court, at all times and in all cases, to protect itself, and sustain its dignity from contempts, is entirely independent from, and irrespective of, whether it has jurisdiction to try the civil case during the trial of which the contempt occurs as an incident or episode. (Williamson's Case, 67 Amer. Dec., 381; Davis v. State, 51 Northwestern, 942.)

11. The contempt proceedings were not a part of this case, but were an episode or incident, that arose between the court and its contemnors, during the progress of this case. (Davis v. State, 51 Nortwestern Rept., 942 (2 North Dakota, —); In re Whitmore, 25 Pac. Rept., 525 (9 Utah, 441); Williamson's Case, 67 Amer. Dec., 383; Kirk v. Milwaukee, 26 Fed. Rept., 508; New Orleans v. Steamship Co., 20 Wallace, 392.)

12. This court has no jurisdiction to entertain an appeal from, or to revise, the proceedings for contempt in the court below; as both the statute of the State, and the decisions, prohibit such appeal. (Kentucky Statutes, sec. 950; Johnson v. Commonwealth, 1 Bibb, 602; Patton v. Harris, 15 B. M., 613; State v. Galloway, 98 Amer. Dec., 404; 22 Amer. State Rept., 417; Hayes v. Fisher,

102 U. S., 121; Ex parte Tyler, 149 U. S., 164; Ex parte Parts, 93 U. S., 23.)

13. The cases of Bickley v. Commonwealth, 2 J. J. M., 572, and Turner v. Commonwealth, 2 Met., 624, only hold that this court will revise the degree of punishment imposed, to see if it was of a lawful character, but will not revise the question of whether there was a contempt. Where the order committing for contempt is void, the remedy is by *habeas corpus*, only. (In re Tyler, 149 U. S., 164.)

14. The election of the new board of directors was not void under the "cumulative" voting section (207) of the new Constitution; for no one offered to vote cumulatively, and no one was refused the right to do so. (Thompson's Commentaries on Corporations, sec. 787; Waterman on Corporations, sec. 57; Cooley's Const. Lim., 6th ed.. 214.)

15. Said "cumulative" voting clause in the new Constitution was not intended to be retroactive, and to apply to corporations previously created. (Cooley's Const. Lim., 6th ed., page 777; State v. St. Joseph's, 116 Mo., 575; Watts v. Com., 78 Ky., 329; Pecot v. Police, 41 La. Ann., 706.)

16. If intended to be retroactive, and to apply to pre-existing corporations, the constitutional provision was void as to them, as impairing vested property rights and depriving the stockholders of the use of the property without due process of law. (Orr v. Bracken County, 81 Ky., 593; Cook on Stockholders, 3d edition, section 609a; Thompson's Com. on Corp., section 3866; Morawetz on Corp., 2d edition, section 1059; Hayes v. Com., 82 Pa. St., 518; State v. Grier, 78 Mo., 188.)

17. Geo. L. Peter was eligible as a director; first, because he was, as devisee, the owner of one-sixth of the stock left by his father at his death; and second, because he was executor of his father, who was a stockholder (St. Lawrence Co., 44 New Jersey, 539; State v. Smith, 15 Oregon, 98; Cook on Stockholders, section 623; Beach on Private Corp., section 300.)

18. Neuner was elected as director; because, while he received less votes than Gerst, yet Gerst was ineligible, and was known to be so by the voters when they voted for him; and the votes cast for one known to be ineligible are not to be counted for any purpose, and, not counting them, Neuner was elected. (McCreary on Elections, sec. 633; Gulick v. New, 77 Amer. Decisions, 49: Dillon Municipal Corp., 4th ed., sec. 196, note; Cooley's Const. Lim., 6th ed., 780, note; Com. v. Read, 2 Ashmead (Pa.), 261; Rex v. Coaks, 3 Ellis & Blackburn, 253, 254; Beach on Priv.

Corp., sec. 300; Hutchison v. Tilden, 4 Harris & McHenry (Md.), 279.)

19. As Neuner held the certificate of election, and no one contested his election, and he was admitted by the board as a member, and no one with better title claims his office; he will be treated as a *de jure* officer. (Beach on Priv. Corp., sec. 298.)

20. Even if Neuner was not *de jure*, he was *de facto*, a director; and, no one disputing his right, all his acts are as valid and binding as if he was *de jure*. (Thomp. Com on Corp., sec. 788; Cooke on Stockholders, sec. 623; 17 Encyc. of Law, page 82; Despatch v. Bellamy, 37 Amer. Decisions, 203.)

21. Whether Peter and Neuner were elected or not, yet, as there were enough of the new members elected to make a quorum, the old board could, in no event, "hold over." (Thompson's Com. on Corp., sec. 784; Cook on Stockholders, sec. 608.)

22. As the new board (or a quorum of them) were the only legal and proper directors, the judgment appealed from was right, in turning over the company's assets to them.

JUDGE Du RELLE DELIVERED THE OPINION OF THE COURT.

.The Oregon Gold Mining Co. was incorporated by articles filed in the Jefferson County Court in October, 1885, its principal place of business being Louisville, Ky. It was the owner of a gold mine in Union county, Oregon. More than half a million dollars had been invested in the stock and bonds of the corporation prior to October, 1893, but without profitable results. One mortgage of $200,000, another of $40,000 and another of $30,000 had been executed by the company upon its mines and property, and it had incurred a floating debt in addition. For the greater part of the period mentioned, Mr. Geo. H. Dietz had been the president, Mr. A. L. Schmidt, treasurer, and Mr. H. W. Bohmer, secretary, of the company. The charter provided for the annual election of a board of nine directors, which should elect a president, a secretary and a treasurer.

At the election of 1892, Messrs. Dietz, Schmidt, Kelly, Houston, Mitchell, Wolters, Bohmer, Gerst, and Wolkup were elected directors, and Messrs. Dietz, Schmidt and Bohmer were elected president, treasurer and secretary, respectively. An election was held on October 17, 1893. There was dissatisfaction among some of the stockholders with the management of the company, and two tickets were nominated, one being composed of the former members of the board of directors and the other being the same ticket, with the exception that the names of Messrs. Zimmerman, Peter and Neuner were substituted for those of Messrs. Bohmer, Gerst and Wolkup. A certificate of election was given by Abner Harris as chairman and Frank A. Gerst as secretary of the stockholders' meeting that the gentlemen composing the new ticket were elected directors of the company. Messrs. Schmidt and Dietz claimed that the election was void, and that the old board of directors held over. Schmidt, Dietz, Houston and Kelly were requested on several occasions to meet with the other five, who composed the new ticket, and organize the new board, but failed to do so. The other five thereupon held a meeting, to which the four mentioned were invited, but which they did not attend, and elected Wolters, president, Peter, treasurer and Matthews, secretary. Schmidt, Dietz and Bohmer refused to recognize the members of the new ticket, and called no meeting of the old board.

On November 17, 1893, this suit was instituted in equity by Mitchell, Wolters, Zimmerman, Peter, Neuner and some other stockholders against the company, Schmidt, Dietz and Bohmer, setting up in substance the facts above stated,

(37)

and alleging that Dietz, Schmidt and Bohmer had misman-
aged the business of the company, and had thereby entailed,
and would entail, great and irreparable loss and injury;
that they had charge of all the personal property, books,
papers, etc., of the company, and control of its works; that
the new board had been elected by a large majority of the
stockholders, who desired a change in the management;
that the officers selected by the new board had demanded
possession of the books, papers and moneys of the company,
and control of its affairs, but had been refused; that by
reason of the claim of two boards of directors and two sets
of executive officers to the possession of the property, the
company could not carry on business, make contracts or
operate its mines, and that the company would thereby be
entirely wrecked and the value of its property wholly or
in great part destroyed. It was further alleged that the
old executive officers refused to give information concern-
ing, or permit an inspection of, the books of account of the
company; that only a small portion of the interest had been
paid on any of the bonds, but that the interest had
been repeatedly allowed to default, and that un-
less a receiver were appointed to take charge of the books,
money and property of the company, and manage it, pro-
ceedings for the foreclosure of the mortgages would be in-
stituted, the property sold at a sacrifice and the interests
of the stockholders lost. Various specific instances of mis-
management were charged, and it was prayed that the
defendants be enjoined from interfering with or prevent-
ing the new board from taking possession of the books,
papers and assets of the company, and for the appointment

of a receiver to take charge of the property until it could be placed in the hands of new officers.

Pending the hearing upon motion for the appointment of a receiver, an *ad interim* order was entered by the court of its own motion on December 11, 1893, that, during the pendency of the motion, neither party should cause any steps to be taken, or allow any application to be made in their names for the possession of the mines in Oregon, or for a receiver in Oregon or in any other court? On the same day the appellant, Schmidt, who was trustee for the bondholders in the mortgages before referred to, instituted a suit in the Oregon court, seeking the appointment of a receiver there to take charge of the property of the company.  On the 13th day of December, 1893, the trial court appointed a receiver and directed him to take charge of the books, papers and assets of the company in Kentucky, and also to take possession of the property in Oregon.  Proceedings for contempt for disobedience to the order of court were instituted against Schmidt and Dietz.  Their right to appeal from the order of injunction was denied by the trial court, and they resorted to mandamus proceedings to secure the right.  The decisions upon the various appeals in regard to these questions are reported in the cases of Kelly v. Toney, 95 Ky., 338; Schmidt v. Mitchell, 93 Ky., 342; and Kelly v. Mitchell, 98 Ky., 218.

An immense mass of testimony has been taken in the case, and every point which could be raised has been elaborately and ably argued by counsel.  But, as said by Judge Lewis in the opinion in the case last referred to: "The subject-matter of controversy in this action is posses-

sion and control, according to articles of incorporation, of
the property and business affairs of 'The Oregon Gold
Mining Co.,' and is exclusively between plaintiffs, suing
therefor as directors and executive officers, certain stock-
holders uniting with them, and defendants, who, as in-
cumbents, plead an adverse claim. And thus was formed
the single issue in the action of title to the offices. Con-
sequently, the only determinate judgment the lower court
had jurisdiction to render in favor of plaintiffs, if any at
all, is that those of them so indicated in the petition con-
stitute the legal board of directors and of executive officers,
and are entitled to the possession and control."

The first ground of reversal urged on behalf of appellants
is that the election was not held by the cumulative system of
voting; that the present Constitution (section 207) provides
that, in all elections for directors of any corporation, the
system of cumulative voting shall be adopted, and that
directors or managers of corporations shall not be elected
in any other manner; and that, in pursuance of that section
the general assembly adopted an act providing for taking
such votes upon the cumulative system. It is unnecessary
for us to consider or pass upon the question which is raised
by appellees, whether this section of the Constitution and
the act passed in pursuance thereto were not prospective
in their nature, and applicable only to corporations there-
after created, or which should thereafter adopt provisions
of the new Constitution. It is only necessary to say that,
under the cumulative system of voting, stockholders are
entitled to vote in the mode which prevailed before the
adoption of that system, if they so desire. That is to say,

a man holding ten shares of stock in this corporation could either cast ten votes each for nine candidates for election to the board of directors, or he could cast ninety votes for one candidate. It does not appear that any stockholder claimed the right to cast his vote upon the cumulative system, and no stockholder was required to vote his stock cumulatively, unless he so desired. It appears that the appellants themselves were present at the election, and did not claim the right to vote their stock cumulatively or object to the right of any other stockholder to vote according to the old method. We, therefore, conclude that the manner of holding the election was legal, inasmuch as no stockholder was denied the right to vote his stock cumulatively.

The next question presented for decision is as to the casting of the vote of the stock belonging to the estate of Jacob Peter, deceased. It appears from the evidence that Jacob Peter left a will, in which he appointed three executors—the appellee, George L. Peter, Henry Peter and George W. Lewman. By the will $124,000 of stock in this company was devised to six children, one of whom was appellee, George L. Peter. At the time of the election in October, 1893, the stock had not been distributed by the executors. Neither Lewman nor Henry Peter were present at the election. On March 4, 1893, Lewman had given to Dietz a proxy to vote the stock held by him as executor at meetings of the company; but it appears that, a few days before the election, Lewman and Henry Peter united in a proxy to George L. Peter to vote the stock held by the estate at the election in question. Dietz presented his proxy, but Mr. Peter being present, and claiming the right as executor to vote the stock,

Dietz withdrew his claim (it is now claimed temporarily, and with the right reserved to revive it at a future time), and made no objection to Peter casting the vote of the stock belonging to the estate. It was accordingly cast by Peter, and counted in the tabulation of the vote.

In Cook on Stockholders, section 612, it is said: "An administrator or executor may vote on the stock of the deceased stockholder, even though such stock has not been transferred to the executor or administrator on the books of the company."

It is conceded by counsel for appellants that it is clear that the executors have power to vote the stock of their testator at all elections, being the personal representatives of such decedents, and that until a settlement and division of the estate the stock of a decedent belongs to his personal representative. But it is claimed that, while the office of executor may be filled by more than one person, all the executors make but one officer; and that, therefore, Peter had no right to revoke a proxy given by his co-executor Lewman, and that Lewman's proxy produced by Dietz at the election should have been regarded as of at least as much weight and authority in regard to the Peter stock as the action of George L. Peter. It is also claimed that the fact that George L. Peter had in his possession a proxy from his co-executors, authorizing him to cast the vote of the estate, would not avail, because he failed to produce it at the election. As to this, we are of opinion that if Lewman, as executor, had authority to issue a proxy on behalf of the estate, his co-executor had equal authority to revoke it. George L. Peter was the only one of the executors

in attendance at the election; so far as that election was concerned he represented the estate. No objection was made to his casting the vote of the stock belonging to the estate. He was permitted to cast that vote, and was in possession of written authority to do so from his co-executors. We have been referred to the case of Tunis v. Hestonville R. R. Co., 149 Penn. State, in which there was conflict between three executors, all of whom were present at the election, as to how the vote of the estate should be cast. It was there held that, as the executors were joint owners, one joint owner could not vote it against the protest and objection of his co-owner; and, therefore, the stock could not be voted at all. In this case, there was no conflict between the executors. The joint owner present at the election had, in the absence of his co-owners, the right to vote the stock; and such vote by the executor who was present was a revocation of the proxy theretofore given by his co-executor. Nor can we concur in the contention that the provision in the proxy given to Dietz by Lewman, that it should remain in force until "revoked by me by giving the secretary of said company notice over my own signature that it had been revoked," rendered the proxy irrevocable, except in the mode prescribed. "A proxy is always revocable. Even when by its terms it may be irrevocable, the law allows the stockholder to revoke it." (Cook on Stockholders, section 610). A proxy holder is a mere agent. His powers exist only at the will of his principal, and may be revoked by the latter at any time. It is immaterial whether an agent is engaged for a definite term or not, as the agency and the contract of hiring are entirely distinct. The authority may

be withdrawn, even though the party would remain liable upon his contract of hire. And we think it is not essential that the mode provided in the appointment of the agent for the revocation of his authority should be strictly followed. We are of opinion, therefore, that the casting of the vote on the stock belonging to the Peter estate by George L. Peter was legal.

The next question presented for decision is whether George L. Peter was eligible to election as director. He held no stock in his own name upon the books of the corporation, but was entitled as devisee to one-sixth of the stock belonging to his father's estate. The law seems to be well settled, as contended for by appellant, that until distribution the stock of a decedent is unadministered assets in the hands of the personal representatives, and the legal title is in them. It is unnecessary, in our judgment, to consider the distinction claimed on behalf of appellees between the necessary qualifications of a voter at a corporate election and the qualifications required to make one eligible as director. It is said in Cook on Stockholders, section 623: "An executor may be a director. If the charter or statutes require a director to be a stockholder, one who holds stock transferred to him in trust for the express purpose of qualifying him for the position may serve. And where a person has the right to vote on stock as a stockholder, he is eligible to any corporate office to which any stockholder is eligible, and accordingly may be elected a director, even though an assignee in bankruptcy has been appointed of his estate."

We see no reason why a fiduciary may not become a director of a private corporation. If the law were otherwise,

it might result in the corporation being unable to elect qual-
ified directors, by reason of the fact that the total stock was
held by fiduciaries.

The next question for decision is as to the election of
Neuner. It is conceded that F. A. Gerst received more votes
than Neuner. Mr. Gerst's father is conceded to have been
a stockholder in the company at the time of his death. We
have found nothing in this record to show whether the
elder Gerst left a will, or whether administration was
granted of his estate. There is no evidence of ownership
by F. A. Gerst of any stock in the corporation. Mr. Gerst
was, therefore, ineligible. It was alleged in the reply, and is
uncontroverted, that at the election appellant Dietz objected
to F. A. Gerst, Jr., being elected as a director, on the ground
that he was not the owner of any stock; that Dietz and
Bohmer (who was a defendant in the lower court) each
produced affidavits, in which they swore that he was not
the owner of any stock, and that he was thereupon held not
to be eligible, and that appellant Dietz, who received a less
number of votes than Gerst, and Neuner, who also received
a less number of votes, were declared elected directors;
that Gerst never claimed or asserted any right to the position,
and has acquiesced in the election of Neuner as director.
It appears from the evidence that Gerst not only acquiesced
in the ruling that he was ineligible, but as secretary of the
stockholders' meeting certified to the election of Dietz and
Neuner; and it is very earnestly claimed by appellees that,
while in corporate elections the general rule is as given by
McCreary on Elections, section 633, that votes cast for a dis-
qualified or ineligible candidate are not thrown away, so

as to make the election fall on a candidate having a minority of the votes (especially if it is not shown that the stockholders casting such votes had knowledge of the fact which rendered the candidate voted for by them ineligible and disabled from holding office), nevertheless where the voters are told that the person for whom they voted is ineligible, they must be considered as throwing away their votes, and the eligible candidate receiving the highest number of votes is elected. A number of authorities are cited in support of this doctrine, among which are Cooley's Constitutional Limitations (6th ed.), note on page 780, where it is said: "But it has been held that when ineligibility is notorious, so that the electors must be deemed to have voted with full knowledge of it, the votes for an ineligible candidate must be declared void, and the next highest candidate is chosen."

In Dillon on Municipal Corporations (4th ed.), section 196, note, it is said, quoting People v. Clute: "But not only the fact which disqualifies, but also the rule or enactment of law which makes it thus effectual, must be brought home so clearly to the knowledge or the notice of the elector as that to cast a vote therewith indicates an intent to waste it, in order to render his vote a nullity."

In the case quoted in Dillon (50 N. Y., 451), it was said: "Those who, knowing that a person is ineligible to office by reason of any disqualification, persistently give their ballots for him, do throw away their votes, and are to be held as meaning not to vote for any one for that office. * * * No one can doubt that if an elector would nominate and vote only for a woman to fill the office of Mayor or Burgess in Parliament, his vote would be thrown away. There the

fact would be notorious, and every man would be presumed
to know the law upon that fact."

In Beach on Private Corporations (2d ed.), section 300,
it is said: "Votes cast for a candidate who is ineligible may
not be discredited so as to give the election to a candidate
having a minority of votes unless the electors knew of the
ineligibility of the candidate voted for."

In this case it appears from the evidence that Gerst was
very active in his opposition to the old board, and that Dietz
and Bohmer were very much opposed to his election as
director, and gave ample notice to the stockholders voting ,
that he was ineligible by reason of the fact that he was not
a stockholder. Whether the rule of law which would
exclude him from the directory on that account was
brought home to the stockholders is a more serious ques-
tion. It was ruled by the officers of the meeting that he was
ineligible. He acquiesced in that ruling, and certified to the
election of Neuner, who—as the vote of the Peter estate is
held to have been legally cast—received the next highest
number of votes. It is true that, according to the testimony
of Wolters, Gerst delivered to him his resignation as a direc-
tor; and this is urged as a claim by him of right to the office;
but it seems more probable that it was an attempt on his
part to emphasize the fact that he did not claim the office.
Nevertheless the question is not what Gerst consented or
agreed to, but what was the real result of the election held.
In Morawetz on Private Corporations, section 485, it is said:

"It has been held that 'votes cast for a candidate who is
disqualified for the office will not be thrown away, so as to
make the election fall on a candidate having a minority of

votes, unless the electors casting such votes had knowledge of the fact on which the disqualification of the candidate for whom they voted rested, and also knew that the latter was, for that reason, disabled by law from holding office."

In the text of Cook on Stockholders, section 623, the law is thus stated: "Votes cast for a person not eligible to the office can not elect him. He is not even a *de facto* director, and he may be ousted by legal proceedings. Such votes, however, are not to be ignored so as to elect a candidate who received a minority of all the votes cast."

In the case of the Queen v. The Mayor, 3 Law Rep. Q. B., 629, it was held that, although the electors had actual notice of the fact which had been adjudged to disqualify, nevertheless knowledge on their part of the adjudication could not be presumed. It was there said:

"It is not enough to show that the voter knew the fact only; but it is necessary to show sufficient cause to raise a reasonable inference that he knew that the fact amounted to a disqualification. It could not be said in all cases that the mere knowledge of a fact, which in law disqualifies a candidate, must be taken to be a knowledge of all the accompanying circumstances.

"We think that the rule is this: The existence of the fact which disqualifies, and of the law which makes that fact operate to disqualify, must be brought home so closely and so clearly to the knowledge or notice of the elector as that to give his vote therewith indicates an intent to waste it. The knowledge must be such, or the notice brought so home as to imply a willingness in acting, when acting is in opposition to actual impulse to save the vote and make it effectual.

He must act so in defiance of both the law and the fact and so in opposition to his own open knowledge that he has no right to complain of the loss of his franchise, the exercise of which he has wantonly misapplied." And see Dillon on Municipal Corporations, volume 1, section 196, and authorities there cited.

From the authorities mentioned we have concluded, though with considerable hesitation, that the stockholders in this company were not bound to know that the fact of which they had notice, that Gerst held no stock in his own name, rendered him absolutely ineligible as a director; and that we must not assume them to stand in the same attitude as a voter who, having notice of an election, deliberately refuses to exercise the right of suffrage. Nor can we agree with counsel for appellee that Neuner was a *de facto* director, for the purposes of this litigation; and that, therefore, his acts, including the election of Wolters, Peter and Matthews, were valid and bound the corporation. This was a direct proceeding by one set of officers, claiming to be the legal and *de jure* officers of the company, to obtain possession of the books and papers. The other set of officers were actually in the exercise of the powers and duties of the offices claimed by them. In a proceeding affecting the rights of third persons, they, and not the appellants, would be the officers *de facto*. There had been no ratification or acquiescence on the part of the corporation up to the date of the order appointing the receiver in this State; the old officers had been "allowed by the proprietors of the corporation to take control of its property and to exercise its functions and powers." (Morawetz on Private Corporations, sections 638 and 640.)

We do not think the doctrine as to so-called *de facto* officers has application in a direct proceeding to try the title to the offices. It follows, therefore, that only four of the directors who met and attempted to elect officers were entitled to vote, and they did not constitute a quorum of the board of directors. It was, therefore, error to hold that Wolters, Peter and Matthews were elected to fill the executive offices of the company.

It does not follow, however, that the old board of directors held over. Eight directors were undoubtedly elected at the election of October, 1893, and these constituted the governing body of the corporation (Cook on Stockholders, section 609, referring to People v. Fleming, 13 N. Y., Sup., 715). A vacancy existed in the board elected, which could be filled either by the directors, under the provisions of the charter, or by holding a new election by the stockholders.

The effect of docketing this case by mistake in the law and equity court, instead of in the chancery court to which it had been assigned by lot, has been passed upon in the former appeal reported in 98 Ky., 218; and we think that the power of the trial court to appoint a receiver in a case where violent internal dissension existed in the corporation, and two sets of officers were struggling for the right to administer the affairs of the company, was also passed upon in the petition for rehearing upon that appeal. In this behalf we do not feel authorized to hold that the lower court abused its discretion.

We find in this record a mass of testimony and argument in regard to accounts of the officers who had managed the affairs of the corporation up to the bringing of the suit.

There being no issue in regard to these matters they should all be disregarded as irrelevant.

An amended answer was filed by appellants in the lower court, stating specifically the legal vote cast at the election. as claimed by them; and it is claimed that, as no traverse was filed to this amendment, it is conclusive. It, however, if not a pleading of the evidence relied upon to prove the averments made in the original answer, was a substantial reiteration of the averments thereof in more elaborate form, and no additional denial was required. (Preston v. Beall, 14 Ky. Law Rep., 61; Macklin v. Trustees, 13 Ky. Law Rep., 93; Robinson v. Williamson, 7 Bush, 604; Newman's Pleading and Practice, 717.)

Immediately after the institution of proceedings for contempt an affidavit was filed by Schmidt and Dietz, under section 968 of the Kentucky Statutes, which provides that:

\* \* \* "If either party file with the clerk of the court his affidavit that the judge will not afford him a fair and impartial trial or will not impartially decide an application for a change of venue, the parties, by agreement, may select one of the attorneys of the court to preside on the trial, or hear the application, or hold the court for the occasion; and on their failure to agree upon an attorney, the attorneys of the court who are present and not interested, nor employed in the case, shall elect an attorney of the court then in attendance, having the qualifications of a circuit judge, to hold the court for the occasion, who shall preside accordingly."

In the case of the German Insurance Co. v. Landram, 88 Ky., 434, this court held that, where such an affidavit is filed, it becomes the duty of the judge to pass upon the

sufficiency of the affidavit, and to determine whether the facts stated in the affidavit, make it improper for the presiding judge to try the case. It was there held that it was insufficient to state that the party making the affidavit believed he could not obtain a fair and impartial trial, and the court said that: * * * "If the charges are false, they should be made in such a manner as would subject the party making them to criminal punishment. The fact or facts upon which the belief that the judge will not give the litigant a fair trial should, and must, be stated in the affidavit, and they must be of such a character as shall prevent the judge from properly presiding in the case."

A careful examination of the affidavit filed in this case shows that the averments are based almost entirely upon hearsay, and that it is not drawn in conformity with the rule laid down in the Landram case, *supra*. We do not feel authorized to hold that, in deciding this affidavit to be insufficient, there was an abuse of judicial discretion by the trial court.

For the reasons stated the judgment is reversed and the case remanded, with directions to set aside the judgment, and for further proceedings consistent with this opinion.