### HATTIE WILLARD *v.* E. F. NORCROSS.

January Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed February 11, 1910.

*County Court—Presiding Judge—Change of Venue—Exceptions
to Refusal of Presiding Judge—Validity—Application for
Change of Venue—Discretion of Presiding Judge—Preju-
dice—Sufficiency of Affidavits—P. S. 1492—Construction—
"When it Appears"—"Reason to Believe."*

At common law, a case can be reviewed on a bill of exceptions only
through a writ of error.

All of our statutes relating to a review on a bill of exceptions have
reference to exceptions taken to the action of the trial court, and
not to that of the presiding judge thereof; and P. S. 1357, pro-
viding that any superior judge, on application and notice, may in
vacation hear any interlocutory motion in a case pending in
county court, and make any order therein that the county court
could have made, and that by agreement he may try issues of
fact submitted to the court, and render any judgment that the
county court could have rendered if in session, and allowing ex-
ceptions to be taken from such orders as if made at a stated ses-
sion of the county court, does not authorize the presiding judge
of the county court to allow exceptions to his refusal to remove
a case to another county for trial on account of local prejudice,
on application to him, under P. S. 1492, for a change of venue.

P. S. 1492, providing that "when it appears" to the presiding judge
of the county court that "there is reason to believe" that a pend-
ing civil action cannot be impartially tried in the county, he shall,
on petition of either party, remove the cause to another county
for trial, requires that there shall be proof sufficient to satisfy
the conscience of the judge, and to beget in his mind a reasonable
belief of the ultimate fact that an impartial trial cannot be had
in the county where the case is pending, and the evidence must
be of relevant facts, so that the judge may draw his own conclu-

sions therefrom, the opinion of witnesses being insufficient; and the judge's ruling that it must "clearly appear" that justice could not be done, in order to justify a change of venue, did not incorrectly state the measure of proof.

On application for a change of venue, under P. S. 1492, the presiding judge has a reasonable discretion in determining whether there is reason to believe that an impartial trial cannot be had in the county where the case is pending.

On defendant's application for a change of venue on the ground of local prejudice preventing an impartial trial, evidence that he was elected one of the selectmen of his town and overseer of the poor at the last town meeting was proper to be considered on the question of prejudice.

On an application for a change of venue on the ground of local prejudice preventing an impartial trial, evidence *held* to sustain a finding of the presiding judge that the local prejudice against the defendant in the county of the venue was not sufficient to prevent an impartial trial there.

CASE for malpractice, Essex County. Heard before *Miles*, J., on defendant's petition under P. S. 1492, for change of venue on the ground of local prejudice preventing an impartial trial. Petition denied, to which defendant excepted. The defendant also brought to the Supreme Court for Essex County, at its October Term, 1909, his petition for a writ of *certiorari* to review said proceeding for change of venue, which petition was heard with the exceptions.

*Dunnett & Slack* and *Young & Young* for the defendant.

The presiding judge of the county substantially held that defendant must prove beyond a reasonable doubt the existence of local prejudice preventing an impartial trial. This was error. It need only appear that there is probable ground to believe that an impartial trial cannot be had. *Mylock* v. *Saladine*, 3 Burr. 1564; *People* v. *Webb*, 1 Hill 179.

*H. W. Blake* and *Howe & Hovey* for the plaintiff.

Previous to the passage of the statute which has become P. S. §1980, it was uniformly held by this Court that the statute

providing for the bringing of cases before the Supreme Court upon exceptions extended only to cases in which the proceedings in the court below were according to the course of the common law. *Beckwith* v. *Houghton,* 11 Vt. 603; *Courser* v. *Vt. Central R. Co.,* 25 Vt. 477; *Stiles* v. *Windsor,* 45 Vt. 521. The granting or denial of a petition for change of venue is within the discretion of the trial court, and not reviewable on writ of error. *Kennon* v. *Gilmer,* 131 U. S. 22, 33 L. Ed. 110; *McFaul* v. *Ramsey,* 20 How. 523, 15 L. Ed. 1010; *Barrington* v. *Missouri,* 205 U. S. 483, 51 L. Ed. 890; *Watson* v. *Whitney,* 23 Cal. 375. In our practice proceedings to revise a judgment of the county court by exception are similar to proceedings upon a writ of error and are not like proceedings upon exceptions in the English practice. This Court, upon exceptions, cannot revise the finding of the county court upon matters of fact. If the presiding judge had any power to pass said proceedings to this Court upon exceptions, the denial of the petition for change of venue being a matter of discretion, would not be reviewable upon exceptions. *Pomfret* v. *Barnard,* 44 Vt. 527; *Snow* v. *Carpenter,* 54 Vt. 17. The petition for writ of *certiorari* should be dismissed by this Court as a matter of discretion. The writ of *certiorari* is not demandable as a matter of legal right, but it rests in the discretion of the Court to grant or refuse it. The petitioner must show that substantial injustice has been done, and that this may be remedied if the writ is awarded. *Paine* v. *Leicester,* 22 Vt. 44; *Lyman* v. *Burlington,* 22 Vt. 131; *Londonderry* v. *Peru,* 45 Vt. 424; *Gray* v. *Middletown,* 56 Vt. 53; *French* v. *Barre,* 58 Vt. 567; *Hancock* v. *Worcester,* 62 Vt. 106; *Stevens* v. *Hill,* 74 Vt. 164. The writ of *certiorari* will not lie to review errors in matters of discretion.

ROWELL, C. J. This is an action against the defendant for malpractice as a physician and surgeon. It has been twice tried by jury in Essex county court, resulting each time in a verdict for the plaintiff, and each time taken to this Court by the defendant, where such proceedings were had that new trials were granted. And then, before another trial in county court, the defendant, pursuant to the statute in such case made and provided, preferred his petition to the presiding judge of said court, representing that he can not have an impartial trial in

that court because of the prejudice existing against him in said county in respect of the case, and praying for the removal thereof to the county court of another county for trial. But the presiding judge, on the testimony and the facts found and certified up, denied the prayer of the petition, to which the defendant excepted. The plaintiff moves to dismiss the exceptions for divers reasons, and among them, that the presiding judge had no authority to allow exceptions and pass the case to this Court thereon, and that the proceeding is not according to the course of the common law. But the defendant says that it is according to the course of the common law, as shown by *Mylock* v. *Saladine*, 3 Burr. 1564, in which an order for a change of venue was made on the ground of local prejudice, and which, the defendant says, evidently went up on exceptions. But the case does not show how it went up. It could not, however, have gone up on exceptions under the common law, for under that law, when a bill of exceptions was sealed and the judgment entered, the mode of proceeding was to bring a writ of error to remove the case to the court above, because a bill of exceptions was to be made use of only upon a writ of error. 2 Tidd's Pr. [*864] ; Wharton's Law Dict. 95.

The statute under which this petition is brought provides that "when it appears to a presiding judge of the county court that there is reason to believe that a civil action pending in such court cannot be impartially tried in the county where it is pending, such judge shall, on petition of either party, order the cause removed to the county court in another county for trial." P. S. 1492. The statute also provides that "any superior judge on application of either party and on reasonable notice to the attorney of the opposite party, may, in vacation, hear and determine an interlocutory motion in a cause pending in a county court, and may, to expedite the trial of such cause, make any order therein which the county court could make if in session; and, by agreement of the parties, any superior judge may, at any time or place, try and determine issues of fact submitted to the court, and render any judgment therein which the county court could have rendered if in session. Exceptions may be taken from such orders and judgments as if they had been made at a stated session of a county court." P. S. 1357.

The defendant claims that the proceeding in question comes within that section, and as the presiding judge was a superior judge, that exceptions lie by virtue thereof. But that section does not fit the case. There, for the purpose of hearing interlocutory motions, notice is to be given to the attorney of the opposite party; here, to commence the proceeding, the petition must be verified by affidavit, and served on the adverse party like a writ of summons at least twelve days before the time of hearing. There, no order for expediting the trial can be made by a superior judge save such as the county court could make if in session; here, the county court can make no order, but only the presiding judge. There, a superior judge can try an issue of fact submitted to the court only by agreement of the parties. There, the object is, to expedite the trial; here it is, not to expedite the trial but to impartialize it.

And besides, there can be three presiding judges of a county court, namely, a superior judge, an assistant judge of that court, and a Supreme Court judge. It would, therefore, be incongruous to extend the section, which is, in its letter, confined to superior judges, to embrace only one of the class named in 1492, when it cannot be extended to embrace the whole class. And again, when sec. 1492 was first passed in 1867, it applied only to "a judge of the supreme court holding a term of the county court"; and it remained so till the judicial system was changed in 1906 and superior judges provided for, when it was changed to its present form, to adapt it to the new system. During all that time there was no provision for excepting to the action of a judge of the supreme court in the matter of removal; and if it was the purpose to make a change in that respect under the new system, there would be something to show it. But there is nothing in sec. 1357, nor in any of the other provisions of the statute for taking exceptions, for they all relate to exceptions to the action of the court itself. So the exceptions must be dismissed.

As to the petition for a writ of certiorari. The plaintiff objects that it should be denied as matter of discretion; that certiorari does not lie to review errors in matters of discretion; that this Court will review the proceedings of inferior tribunals only in matters of law; that their decisions of questions of fact involving the exercise of discretion can be reviewed only by plac-

ing upon the record facts showing that the tribunal could not in point of law render the judgment it did; that the defendant must show that injustice has been done, and that it may be remedied if the writ is awarded; that the affidavits sent up cannot be reviewed; and that the findings of the presiding judge are conclusive, and fully sustain his action.

But the view we take of the case renders it unnecessary to consider these objections. The statute is that when it "appears" to a presiding judge that there is "reason to believe," etc. This means that it must be *made* to appear, and that can be done only by proof sufficient to satisfy the conscience of the judge, and to beget in his mind a reasonable belief of the existence of the ultimate fact that an impartial trial can not be had in the county where the case is pending. And that proof must consist of sworn statements of facts pertinent to the issue, that the judge may draw his own conclusions from them, for the mere opinion and belief of the witness are not enough, as the judge can not act upon those. This accords with the general rules of evidence, and is the holding of many of the courts. *In re Pennsylvania Co.,* 137 U. S. 451, 457, 34 L. Ed. 738, 11 Sup. Ct. 141; *Schmidt v. Mitchell,* 101 Ky. 570, 72 Am. St. Rep. 427, 437, 41 S. W. 929; note to *Shattuck* v. *Myers,* 74 Am. Dec. 244. But some courts hold that specific facts need not be shown, as they are naturally too vague for specification. But that seems unsatisfactory. The matter may be likened to pleading fraud, in which it is not enough to characterize a thing as fraudulent, but you must allege that which you claim makes it fraudulent, that the court may judge how it is, for the court can not take the opinion of the pleader.

Coming now to consider the substance and legal quality of the twenty-five affidavits submitted by the defendant in support of his petition to remove, it is seen that they can be divided into two classes, namely, one relating to the situation of things in the county generally, and one relating to those things and to things as they exist at the county seat in particular. Now none of the nineteen affidavits attached to the petition and presented with it, contain a statement of specific facts, but only general statements from which the affiants draw their conclusions. A fair sample of the first class is the affidavit of Mr. McClintock of Norton. He has known about the case ever since it was com-

18

menced, and has heard it very generally discussed in stores and
elsewhere in public places, and has heard opinions very freely
expressed as to what the facts purport to be, and as to who ought
to win. From the purport of these discussions and opinions
he believes that a prejudice exists in the county against the de-
fendant as far as the case is concerned, and that a fair and an
impartial trial can not be had there; and believes that a jury
of intelligent and well qualified men can not be drawn in the
county who have not either expressed an opinion about the case
or heard it fully discussed. A fair sample of the other class
is the affidavit of Mr. Jordan of Maidstone, who lives within
half a mile of the court house. He has heard a very general dis-
cussion of the case in stores and other public places, not only
in his own town, but in Guildhall and Lemington as well. Has
heard opinions very freely expressed by intelligent men as to
what the facts purport to be, and as to who ought to win, and
from the purport of these discussions and expressions of opinion
he believes that a prejudice exists in the county against the de-
fendant as far as the case is concerned, and that it would be
impossible to secure a jury of intelligent and well qualified men
who have not expressed an opinion or heard the case fully dis-
cussed, and believes that a fair and an impartial trial can not be
had in the county. He knows very well about the accommoda-
tions at the county seat for boarding jurors and witnesses; that
they have to board together in private families, by reason of
which jurors may be very easily influenced by overhearing con-
versations among witnesses; that during court time there is no
opportunity for keeping a jury in a civil case by themselves
and away from contact with witnesses in the case.

The six affidavits taken by the defendant on leave in rebut-
tal, but which are not in rebuttal, are of a little different char-
acter in that the affiants state some things they have heard said
about the case and the defendant. Thus, one has heard people
say that they hoped the defendant would be licked anyway,
right or wrong. Heard a loud and an animated talk in Guild-
hall last spring when court was in session, could not name a
person present, nor give the language of any one, but the sub-
stance of it all was that the doctor had no case and ought to be
beaten, and they were glad he was beaten, and if the case was
tried again he would be beaten worse. Another heard some of

the plaintiff's friends talk about the case during the same term in the presence of jurors, and make fun of the doctor, and say if they were he they should be ashamed to say that they could not pick twelve honest men in Essex county. Another has heard many people say that they knew the doctor would be beaten and that he ought to be, and if the case was tried again the verdict would be doubled. Another says that people have talked to him and in his presence about the propriety of the doctor's asking to have the case removed to another county for trial, and that most of them took that against him. Another has heard a great many express satisfaction with the verdicts, and say they hoped he would be beaten if the case was tried again. Another says it is a very general idea that the doctor will be beaten eventually, regardless of whether he ought to be or not; and that since the Supreme Court granted him a new trial, he has heard it remarked several times that the jury doubled the verdict the last time, and that the last verdict would be doubled if the case was tried again.

Opposed to these affidavits are the affidavits of the sheriff of the county, of one of his deputies, of the assistant judges, an attorney of the court, and of a former state's attorney, all of whom say, in effect, that they have never heard the case talked about much, and do not believe it has been, for if it had, they would be likely to know it; that they have not known of any prejudice in the county against the defendant, and do not believe there is any that would prevent a fair trial.

Thus it appears that a great majority of the defendant's affidavits are practically lacking in statements of fact pertinent to the issue from which the judge could draw his own conclusions; and this was his principal difficulty, as shown by his findings, in which he says that in nearly all of the defendant's affidavits the affiants have expressed the belief that he can not have an impartial trial in Essex county, and in many of them, have expressed the further belief that a prejudice exists against him in the county, and that in nearly every instance these opinions are based upon conversations they have heard about the case, but that the substance of those conversations in nearly all of the affidavits is not stated, and therefore that he is unable to say whether the conclusions of the affiants are correct or not; that in some of the affidavits at least, if not in all, it is apparent that

the affiants base their opinions upon the fact that the case has been generally discussed in the county, or that the environments at the county seat are such that an impartial trial can not be had there. He then goes on to say that opinions based upon such considerations can have but little weight, for every case is discussed more or less, and that sometimes a case is discussed very generally and yet an impartial trial had. And as to the conditions at the county seat he says that they are not shown to be different in this case from what they are in all other cases tried there. And finally he reaches the conclusion that the mere statement of belief that prejudice exists, without a statement of the facts upon which that belief is founded, is not sufficient to establish prejudice, and refers to *In re Pennsylvania Co.* above cited in support of the conclusion.

He further says that from what the affidavits show have been said about the defendant, he is unable to find that there is any considerable prejudice in the county against him, and that he feels that a qualified jury can be drawn there without difficulty that will impartially try the case.

A reasonable measure of discretion, to say the least, must be accorded to the judge in determining whether the requisite "reason to believe" appears to him. But this discretion must, of course, be exercised according to law, and the defendant says it was not, because the judge did not give his affidavits their legitimate probative force, nor correctly construe the statute, nor apprehend its remedial character and its true intent and purpose, and thereby was misled to require too great a measure of proof, and consequently too strong a conviction of his own mind of the existence of the ultimate fact involved.

The claim as to not giving proper force to the affidavits is largely based on the insistence that most of them state the facts on which the opinions of the affiants are based, whereas we have seen that most of them are entirely lacking in that respect. Our attention is particularly called to certain of the affidavits taken in rebuttal in which specific facts are stated as to discussions of the case heard at Guildhall in court time; and in this connection it is claimed that the defendant's affirmative affidavits can not be overcome by the plaintiff's negative affidavits. But error is not affirmable here unless, as claimed, the judge was acting upon the theory that the defendant was bound to prove his case

beyond a reasonable doubt. This claim is based largely upon what the judge said about his feeling that a qualified jury could be drawn in Essex county that would impartially try the case, and if that could be done it should be done, for the place fixed by law where a case should be tried ought not to be changed unless it "clearly" appears that justice can not be done there. But this can not be construed into a requirement of proof beyond a reasonable doubt, but only of proof reasonably sufficient to satisfy the judicial mind, and this measure of proof should always be required.

As to misconstruing the statute, and misapprehending its character and purpose, it is said that the judge erred in construing it to be the same in legal effect as the Federal statute under which the *Pennsylvania Co.* case arose, because that statute is restrictive while our statute is remedial. But however this may be, no harm has come to the defendant from it, because the judge used that case only as affording satisfactory ground and reason for rejecting that part of the defendant's affidavits which simply expressed belief resting on no stated facts, and that rejection was right on general principles.

In further support of this claim it is said that the judge erred in attaching importance to the fact that at the last town meeting the defendant was elected one of the selectmen of his town and overseer of the poor, and in considering that a "strong piece of evidence" that in the immediate vicinity where he is known there is no general prejudice against him, whereas that fact was no evidence tending to contradict the defendant's affidavits. But we think it was proper for the judge to consider.

And finally, on consideration of the whole case, we do not see that the judge required too great a measure of proof, nor too strong a conviction of his own mind of the existence of the ultimate fact involved; but think that the defendant's defeat was due to what the judge considered, and might well consider, a lack of sufficient evidence.

*Exceptions dismissed and writ denied with costs.*