CASE 39—PETITION EQUITY—OCTOBER 30.

# Kelly v. Mitchell, &c.
# Schmidt, &c., v. Mitchell, &c.

APPEALS FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. RECEIVERS—RIGHT TO ENJOIN CREDITORS FROM PROSECUTING
ACTIONS.—Where persons claiming to be the newly elected offi-
cers and directors of a corporation brought suit against the old
officers to have their title determined and asking "that a receiver
be appointed to take charge of the property until it can be placed
in the hands of its new officers," the court did not thereby acquire
jurisdiction to enjoin mortgage creditors of the corporation from
prosecuting actions in other courts to enforce their liens, or even
to enjoin one of the defendants in his capacity as trustee for cer-
tain mortgage bondholders from seeking in another court the ap-
pointment of a receiver to take charge of the mortgaged prop-
erty pending his suit to enforce the mortgage lien. While it is a
general rule that where a receiver appointed by one court actu-
ally takes possession of the property the control will not be sur-
rendered to a receiver subsequently appointed by another court,
yet in view of the purpose for which the appointment of a re-
ceiver was asked in this case that rule has no application here.

While the action, the prosecution of which was enjoined in this
case, was pending in another State and the mortgaged property
was situated there, it is not necessary to determine the extra-ter-
ritorial force of such an order of injunction, as the order would
not have been valid in this case even if the property had been
wholly within this State.

2. JEFFERSON CIRCUIT COURT—WAIVER OF RIGHT TO HAVE CASE

TRANSFERRED FROM ONE DIVISION TO ANOTHER.—Where a case which has been assigned by lot to one division of the Jefferson Circuit Court is by mistake placed upon the docket of another division, the right of either of the litigants to have the case transferred to the division to which it was properly assigned is waived where a motion to transfer is not made until after questions have been decided and orders entered.

B. F. BUCKNER FOR APPELLANTS.

1. It was illegal for the court, on the application of the stockholders of an insolvent corporation, to seize upon the property of the company and thus render the execution of the trust by the trustee impossible, and to enjoin him from taking legal steps for the execution of his duty plainly conferred upon him by the fourth clause of the mortgages, and made imperative by the written request of a majority of the bondholders. (Douglass v. Cline, 12 Bush, 618.)

2. The power of a court of equity in a foreclosure proceeding to appoint a receiver *pendente lite* is inherent in the court as a part of its incidental jurisdiction. (U. S. Trust Co. v. New York, &c., R.. Co., 101 N. Y., 483; Hollenback v. Donnell, 94 N. Y., 346; Haas v. Chicago Building Society, 89 Ill., 489; 20 Am. & Eng. Enc. of Law, p. 274, note 3; Warner v. Rising Fawn Iron Co., 3 Woods (U. S.), 514.)

3. The Kentucky court had no power to authorize its receiver to seize and administer landed property lying in another State and beyond its territorial jurisdiction. (Booth v. Clarke, 17 How., 322; Mosely v. Burrow, 52 Tex., 402; Watkins v. Hohman, 16 Pet., 25; Wharton on Conflict of Laws, secs. 288,289.290; Farmers' Loan & Trust Co. v. Postal Tel. Co., 55 Conn., 334; Davis v. Headley, 22 N. J., Eq., 120; Wimer v. Wimer, 82 Va., 900; Blunt v. Blunt, 1 Hawks (N. C.), 365; White v. White, 7 Gill. & J., 208; Watts v. Waddle, 6 Pet. (S. C.), 400; Western Union v. P. & A. Tel. Co., 49 Ill., 93-4; Morris v. Remington, 1 Parson Eq., 387; Holmes v. Sherwood, 16 Fed. Rep., 727; Page v. McKee, 3 Bush, 138.)

4. After the assignment of this case on the 21st day of November, 1893, the judge of no other court than the chancery division of the Jefferson Circuit Court had any judicial authority to act upon the subject matter of the action, because jurisdiction once lawfully acquired can not be waived or changed into another tribunal by the consent of the parties, except under the authority of statutes allowing such consent to be made. (Constitution of Ky., sec. 137; Act of Aug. 22, 1892, "concerning courts having four judges;" State v. Richmond, 6 Foster (N. H.), 239; Damp v. Town

of Dane, 29 Wis., 462; Mathie v. McIntosh, 40 Wis., 120; Doctor v. Hartman, 74 Ind., 222; Olmstead's appeal, 43 Conn., 114; 12 Am. & Eng Enc. of Law, 305; Jones v. Kinney, Hardin, 104.)

Failure to object to want of jurisdiction in a court never having possession of the record can never be held to be a waiver of objection to the exercise of jurisdiction. (Commissioners v. Thompson, 18 Ala., 694.)

PINCKNEY F. GREEN for appellees.

1. The Jefferson Circuit Court had jurisdiction over the subject matter of the controversy, which was the books, papers and property in possession and the business and affairs, of the Oregon Gold Mining Company, and the receiver appointed by the Kentucky court had the right to take possession of the property committed to his charge, although it was not in the jurisdictional territory of the Kentucky court. (Bank v. McLeod, receiver, 38 Ohio St., 174; Phelps v. McDonald, 99 U. S., 308; Chaffee v. Quidnick Co., 13 R. I., 449; Cole v. Cunningham, 133 U. S., 118; Moran v. Sturgis, 154 U. S., 272; Schmedeholz v. Cullum, 55 Fed. Rep., 889.)

2. The objection to the jurisdiction of the law and equity division came too late. (Owens v. Owens, Hardin, 158; 3 Am. & Eng. Enc. of Law, 107.)

3. The case was a proper one for the appointment of a receiver. (Beach's Modern Equity Practice, sec. 722; Bank v. Trustees, 63 Ga., 522; East Tennessee, &c., R. Co. v. Atlanta R. Co. 49 Fed. Rep., 608; Wilmer v. Railroad Co., 2 Woods, 426, 427.)

JUDGE LEWIS delivered the opinion of the court.

November 17, 1893, John Mitchell and others, stockholders and alleged officers of "The Oregon Gold Mining Company," a corporation organized under statute of Kentucky, and having its principal place of business in Louisville, brought this action in the Jefferson Circuit Court against George L. Dietz, A. L. Schmidt, and H. B. Bohmer, the company being, by subsequent order, also made a defendant.

In their petition plaintiffs state in substance that for several years the company has owned gold mining property in the State of Oregon upon which a large amount of money

has been expended and indebtedness incurred of $40,000 and $200,000, evidenced by bonds to secure payment of which mortgages on its property were executed. There appears, however, to be another mortgage bond for $30,000 outstanding.

They further state defendants Dietz, Schmidt and Bohmer were, prior to October 17, 1893, president, treasurer and secretary respectively of the company; but, notwithstanding on that day a new board of directors was duly elected, who chose plaintiffs Wolters, Peters and Matthews in their stead, they have since persisted in illegal attempt to damage the affairs of the company and retain possession of its books, papers and property; and, in consequence of the conflict between the old and new board of directors and executive officers thus caused, the company is in danger of being wrecked.

Charges of mismanagement and refusal to make report or exhibit of their transactions as executive officers or of the actual financial condition of the company, as they were required to do, are made in the petition against Schmidt, Dietz, and Bohmer and the relief asked in these words: "Wherefore, plaintiffs pray that said defendants, Dietz, Schmidt and Bohmer, be enjoined from interfering with or preventing the said new board of directors or new executive officers from taking possession of their books, papers, and assets of the company, and from further refusing to deliver over any and all books, papers, money, accounts and other assets in their hands of the company to its new executive officers and new board of directors, and that a receiver may be appointed to take charge of the property *until it can be placed in the hands of its new officers,* and they pray for all equitable relief."

December 7, 1893, Dietz, Schmidt and Bohmer filed answers, in which, after denying various allegations of the pe-

tition, they state and charge that for reasons mentioned, and valid if true, the election of October 17, 1893, was illegal and void as to two directors then elected, and because there was not, excluding them, a quorum present when plaintiffs Wolters, Peters and Matthews claim to have been chosen president, treasurer and secretary, they are not legal successors of the company nor entitled to be treated as executive officers of the company.

December 11, 1893, the lower court on its own motion made an order that pending hearing of the motion of plaintiffs for appointment of a receiver neither party should "cause any steps taken nor allow any application in their names for possession of the mines in Oregon, or for a receiver in Oregon, or in any court other than the law and equity division of the Jefferson Circuit Court;" and December 13, 1893, another order was made appointing Charles Merriwether receiver and authorizing and directing him in that capacity to take immediate possession and control of all property of the company wherever situated, including lands, money, machinery and implements in Union county, Oregon, also all books, papers and money; and, under direction of the court, to manage the business, bring and defend suits and do whatever necessary to acquire, care for and protect property, franchises and rights of the company. It was further ordered that it and all superintendents, agents officers or employes forthwith attorn to and recognize the right of the receiver to take possession of all property and assets and to deliver them to him. Defendants Dietz, Schmidt and Bohmer were ordered to surrender to him all property, money, books, papers and assets in their hands and under their control, and enjoined from interfering with him taking possession or refusing to deliver to him possession thereof.

The three mortgages referred to were executed by the company to defendant A. L. Schmidt as trustee for holders of the bonds, and each contained a clause providing that in case the conpany made default in payment of two installments of interest on any of the bonds after due presentation and demand, the trustee should have right, upon request of holders of a majority of the bonds, to demand, enter upon and take possession of the mortgaged property, and, as agent of the company, use and operate it for the purpose of applying proceeds and income left after deducting costs and expenses to payment of accrued interest, and ultimately the principal of the bonds.

It appears that about November 10, 1893, Schmidt, as trustee, directed his attorney in Oregon to take possession and operate in his name the mining property, permitting, however, the resident superintendent to remain in possession as his agent. But the latter declining to recognize his right to possession, Schmidt, as trustee of the bondholders, instituted, December 11, 1893, a suit in the circuit court of Union county, Oregon, to foreclose the mortgages, and December 15, 1893, upon his motion, an order was made by the judge of the Sixth Judicial District of Oregon, appointing J. A. Wright receiver and directing him as such to take possession and hold, subject to orders of that court, property of the company within its jurisdiction. That conduct of Schmidt was treated by the lower court as willful disregard and contempt of its orders of December 11 and December 13, 1893, for which he was committed to jail, there to remain until he caused discontinuance of the proceeding for appointment of a receiver in Oregon; and, for alleged connivance with him, defendant Dietz, though holder of one or more mort-

gage bonds, was also adjudged to have acted in contempt of court.

If it did not elsewhere in the record appear how the lower court had interpreted and applied the two orders of December 11 and December 13, 1893, and the fair import of the language used was alone considered, we would conclude that the right of neither Schmidt, as trustee of the bondholders, nor of Dietz, as creditor of the company, was intended to be thereby affected or interfered with; but, as in the present posture of the litigation, justice requires it done, we will entertain the appeal by them and revise those orders according to the meaning and effect it is now manifest was intended.

It does not seem to be questioned that all the conditions upon which Schmidt, as trustee, was authorized by clauses of the mortgages mentioned, to take possession of the property in Oregon, existed and had been complied with November 10, 1893, when he directed his attorney to do so for him, thought it was not, in fact, accomplished. Besides, as the attempt was made before this action was commenced, we do not see how it could have been in contempt of the orders in question. Nor, unless he was legally and properly restrained thereby, can there be question of his right or duty to bring and maintain the suit instituted in the Oregon court December 11, 1893, to foreclose the mortgages and to apply for the appointment of a receiver there, for it is admitted by the pleadings in this case that both principal and interest of one mortgage bond were then past due and unpaid, also that the accrued interest on the other bonds for only one year had been paid. It is true he then was and had several years been a director and officer of the company, but that fact did

Kelly v. Mitchell, &c.

not impair his right nor lessen his obligation as trustee un-der the mortgage.

The decisive question, then, is whether the law and equity division of the Jefferson Circuit Court acquired, in virtue of this action, jurisdiction to enjoin Schmidt, trustee, from instituting a suit in Oregon, to enforce the mortgage lien upon property there situated; for, if not, it was likewise without jurisdiction to enjoin him as such trustee from mov-ing for and obtaining an order of the Oregon court or judge thereof appointing a receiver to take possession and control *pendente lite* of the property in litigation.

We do not deem it indispensable for the decision of that question to discuss the extra-territorial force or validity of the order of injunction made by the lower court, nor of the one appointing the receiver, it sufficing for proper and com-plete determination of rights of parties to this appeal to consider the case as if the mortgaged property was situated wholly in Kentucky; for no court that has not itself obtained jurisdiction of the subject-matter of a controversy has au--thority to enjoin a person having an interest therein from prosecuting a suit in regard thereto and seeking incidentally for all necessary provisional remedies in another court of competent jurisdiction, whether it be of the same or another State. Nor has a court jurisdiction to grant in an action re-lief of any character, unless specially prayed for, or, if asked under a general-prayer, it relates to and is consistent with the grievance complained of. A court having jurisdiction of a person summoned to answer in one capacity and on a particular subject of litigation can, it is true, under coercive process for contempt, restrain him temporarily from litigat-ing in another court in a different capacity and in regard to

a foreign and distinct subject, but such action of that court would be erroneous.

The subject-matter of controversy in this action is possession and control, according to articles of incorporation, of the property and business' affairs of "The Oregon Gold Mining Company," and is exclusively between plaintiffs suing therefor as directors and executive officers, certain stockholders uniting with them, and defendants, who, as incumbents, plead an adverse claim. And thus was formed the single issue in the action of title to the offices. Consequently, the only determinate judgment the lower court had jurisdiction to render in favor of plaintiffs, if any at all, is that those of them so indicated in the petition constitute the legal board of directors and of executive officers and are entitled to the possession and control.

It may be the court has jurisdiction, under prayer for general relief, to order settlement of accounts and transactions of defendants as executive officers; but that subject, like the other, pertains peculiarly and entirely to the conduct and condition of private and personal affairs of the corporation, and is disconnected from the subject of the rights and duties of the bondholders and their trustee.

Under section 436, Civil Code, upon institution of an action for settlement of the estate of a deceased person, an order may be made enjoining prosecution of actions against the personal representative by creditors for their demands. The reason for an injunction in such an exceptional case is that the cause of action is for the settlement and distribution of the estate amongst those who may be entitled, including creditors who are allowed to present their just demands and have judgment therefor. Consequently, an independent action by a creditor serves only to harass the personal repre-

sentative and tax the estate with costs and expenses of need-less litigation.

But in this case settlement of the estate of the corporation and payment of its debts is not made a cause of action. Neither Schmidt, as trustee, nor any bondholder, as such, is made a party. No question is made of validity of the bonds or of the trustee's right to enforce collection of them; and, as the case stands, the lower court is utterly without jurisdiction to grant any relief to or against either the trustee or creditors. The order of injunction, therefore, involves the rather startling proposition that the legal effect of litigation between two sets of stockholders and officers of a corporation, about title to the offices and right to have possession and control of its property and business, is to tie the hands of the creditors and keep them so until the conflict is ended.

It seems to us when such conflict occurs there is usually danger, as alleged in the petition of this action, of the corporation being wrecked, and consequently reason for leaving creditors free to pursue whatever remedy they may have to collect their debts, instead of restraining them.

The lower court had authority under section 298 of the Civil Code to appoint the receiver, but the Oregon court was not precluded thereby from appointing a receiver, pending litigation commenced there by Schmidt, as trustee, to enforce the mortgage liens. We are aware of the general rule that where a receiver appointed by one court actually takes possession of the property, the control will not be surrendered to a receiver subsequently appointed by another, but it has no application to this case, because Merriwether was appointed, according to the prayer of the petition, receiver to "take

charge of the property until it could be placed in the hands of the new officers;" and, of course, upon rendition of judgment which set were legal officers, his functions as such receiver, would, *ipso facto*, cease.   In the meantime, the trustee of the bondholders was no more obstructed in having a receiver appointed by another court to take charge, pending his action to enforce the mortgage lien, than if no conflict between stockholders and officers had occurred.

In our opinion the orders in question, so far as they affected Schmidt, as trustee, or creditors of the company, were of no force whatever.

It appears that about December 15, 1893, C. W. Kelly, holder of the mortgage bonds, and also director of the company, instituted an action in the Oregon court asking for judgment thereon and the appointment of a receiver, and, December 20th, plaintiffs, by amending their petition, made him a party defendant, and, pursuant to their prayer, an order of injunction, subsequently enforced by rule, was made restraining him from seeking in that action for appointment of a receiver.   His appeal from that order we will consider in connection with the other, and it is sufficient to say that for reasons already suggested the order was likewise void.

We are called on to decide another question arising on motion of defendants to transfer the action to the chancery division of the Jefferson Circuit Court.   It appears that in determining by lot, as section 1025, Kentucky Statutes, requires the clerk of the court to do, this action fell and was assigned to the chancery division, but by some mistake it was put on the docket of the law and equity division; but the motion to transfer was not made by defendants until January 20, 1894, after the orders now appealed from had

been considered and entered of record; indeed, the motion to transfer involved setting aside all previous orders.

It does not seem to us a duty of the court to make an investigation whether each case he finds on his docket has been properly put there, but rather that of the litigant or his attorney who desires a mistake in that respect corrected. Consequently, his failure to discover such mistake and move for transfer of the action to the proper division should be treated as a waiver of his right, especially where he has delayed until after questions have been decided and orders entered, as was done in this case. And, in view of such condition as the present, section 1028 provides that "no proceedings in such court shall be invalid because prosecuted in the wrong branch thereof."

In our opinion the motion to transfer was made too late and properly overruled. But the orders appealed by Schmidt, Dietz and Bohmer and by Kelly are in each case reversed and the cause remanded, with directions to set them and all proceedings thereunder aside, so far as they affect the trustee or any creditor of the company.


To a petition for rehearing filed by counsel for appellee the court delivered the following response:

The lower court was not in truth, nor intended to be, *severely*, or at all, reflected upon in the opinion of this court, as counsel needlessly say in the "petition for modification of the opinion and rehearing."

It may be we inadvertently used language in the opinion which, unless considered connectively, conveys the idea that mere institution by Schmidt as trustee of suit in the Oregon court to foreclose the mortgages was treated by the

lower court as contempt of its orders.    But our meaning was that if that court had no jurisdiction to enjoin him from instituting the suit, it was also without jurisdiction to enjoin him from moving for an order of the Oregon court appointing a receiver to take possession and control *pendente. lite* of the property in litigation, or for any other provisional or auxiliary remedy as aid to the relief sought, which was to subject the mortgaged property to the satisfaction of the mortgage bonds.    And thus was considered and determined the issue whether appointment by the lower court of a receiver in a particular emergency and pending a mere contest between claimants to offices of the corporation, precluded Schmidt from applying for, or the Oregon court from making, appointment of a receiver to take control of the mortgaged property there situated in the interest of and as security for creditors of the corporation.

No doubt, as said in Cook on Stockholders, cited by counsel, when, as in this case, there are violent internal dissensions in a corporation and two sets of officers are attempting to act and the corporate property is endangered, a court of equity will interfere to the extent of saving the corporate property by a *temporary* receiver; but there is no reason why mortgage or other creditors, not parties to such action, should on that account be denied the right to institute an action in another court and obtain all provisional remedies necessary to secure relief they are entitled to; and we have been referred to no case deciding otherwise; for a contest between claimants to offices of an insolvent or failing corporation is of very little importance compared to rights of creditors.

The petition for rehearing overruled, but the opinion is modified.