## Kentucky Utilities Co. v. Skaggs et al.
## Same v. Bentley et al.

March 16, 1943.

Ogden, Galphin, Tarrant & Street for appellant.

James A. Hall, Jr., for Alla Skaggs et al.

James A. Hall, Jr. and Thomas F. Manby for Mollie Bentley et al.

OPINION OF THE COURT BY JUDGE REES—Reversing.

A motion that these two appeals be heard together has been sustained.

The appellee Mollie Bentley is a widow over 80 years of age and is the owner of 30 shares of the Junior Cumulative Preferred Stock of the Kentucky Utilities Company. For several years she has resided in the home of her widowed daughter-in-law, Alla Skaggs. On June 11, 1940, the Kentucky Utilities Company received a letter from Alla Skaggs enclosing two certificates for 20 shares of the stock owned by Mrs. Bentley. The form of assignment printed on the back of each certificate bore a signature purporting to be that of Mrs. Bentley, but the space provided in the form for the name of an assignee was left blank. In the letter Mrs. Skaggs requested that the 20 shares of stock be transferred to her. On the same day Mrs. Skaggs' letter was received, that is, June 11, 1940, the Kentucky Utilities Company received a letter dated June 10, 1940, signed by Mollie Bentley in which she stated, in substance, that she left Mrs. Skaggs' home on June 9, 1940, and that the latter had obtained from her by force two certificates for 20 shares of the Kentucky Utilities Company stock, and she requested the company to assist her in recovering possession of the stock. Later the company received two letters of similar import, one dated June 13, 1940, and one dated June 20, 1940. All of the letters were more or less incoherent and evidenced a weak or disordered mind. Upon receipt of the letters the company made an investigation to determine Mrs. Bentley's mental condition. On July 8, 1940, it was advised in writing by the cashier of a bank in LaGrange, Kentucky, who knew Mrs. Bentley, not to make a transfer of the stock as Mrs. Bentley's mental condition was not good. At the company's direction its local manager at Lawrence-

burg, Kentucky, visited Mrs. Bentley at the home of a relative at Bondville, Kentucky, where she was then staying, and on July 10, 1940, he informed the company in writing that in his opinion Mrs. Bentley was not mentally capable of handling her business affairs. On August 23, 1940, the company delivered to Mrs. Bentley the two certificates previously forwarded to it by Mrs. Skaggs. On or about October 1, 1940, the company received a letter containing all the certificates owned by Mrs. Bentley, representing 30 shares of stock, and a request that they be transferred to Mrs. Skaggs. What purported to be Mrs. Bentley's signature appeared on the form of assignment on the back of each certificate. The company refused to make the requested transfer, and thereafter a petition in equity styled ''Mrs. Alla Skaggs and Mrs. Mollie Bentley, Plaintiffs, v. Kentucky Utilities Company, Defendant,'' was filed in the Oldham circuit court. The plaintiffs in that action sought a mandatory injunction requiring the defendant to transfer on its books to Mrs. Skaggs the 30 shares of stock then in the name of Mollie Bentley, and to deliver to Mrs. Skaggs certificates for same. The defendant filed an answer, counterclaim, and cross-petition in which it denied that any assignment had been made by Mrs. Bentley, alleged her incompetency, and sought the appointment of a guardian ad litem for her. It also was alleged that an actual controversy existed between Alla Skaggs, Mollie Bentley, and the defendant, and the defendant asked for a declaration of the rights of the parties as to whether or not (a) Mollie Bentley was at the time of any of the transactions alleged in the petition, or was then, mentally competent to manage her estate; and (b) Alla Skaggs, by reason of any of the transactions alleged in the petition, became the owner and entitled to the transfer of the shares of stock. In an amended answer, counterclaim, and cross-petition the defendant set out the letters written by Mrs. Bentley dated, respectively, June 10, 1940, June 13, 1940, and June 20, 1940. The trial court struck from the answer so much thereof as sought to set up as a defense the mental incompetency of Mrs. Bentley, and refused to appoint a guardian ad litem for her. On its own motion the court struck so much of the defendant's answer as sought a declaration of the rights of the parties. Thereupon the company brought a suit under the Declaratory Judgment Act, section 639a-1 et seq., Civil Code of Practice,

in which it sought substantially the same relief prayed for in its pleadings in the injunction suit. The defendants named in the Declaratory Judgment suit were ''Mollie Bentley, a person of unsound mind, and Alla Skaggs.'' A motion for the appointment of a guardian ad litem to represent Mrs. Bentley, supported by the requisite affidavit, was made. The court appointed a guardian ad litem for the defendant Mollie Bentley after a summons had been served upon her as required by section 53 of the Civil Code of Practice. The defendants demurred specially to the petition, and filed a motion to dismiss the petition because another suit was pending in the Oldham circuit court between the same parties and for the same cause. The plaintiff moved to consolidate the two actions, its motion was overruled, and the defendants' special demurrer and their motion to dismiss were both sustained, and the plaintiff's petition in the Declaratory Judgment suit was dismissed. On the same day, February 27, 1942, the court sustained a demurrer to the defensive pleadings of the Kentucky Utilities Company in the injunction suit, and adjudged that it should forthwith cancel the certificates representing 30 shares of its Junior Cumulative Preferred Stock standing in the name of Mollie Bentley and should issue in the name of and deliver to the plaintiff Alla Skaggs a new certificate representing these shares. The Kentucky Utilities Company has appealed from both judgments and insists (1) that after receiving notice of Mrs. Bentley's mental incapacity it properly refused to transfer her stock; and (2) because of the trial court's error in not determining Mrs. Bentley's capacity to sue, the judgment in the injunction suit cannot be conclusive of her rights, and therefore the Declaratory Judgment suit was erroneously dismissed.

In behalf of appellees it is argued that mental incompetency of the owner of stock certificates is not a good defense in a proceeding to require the corporation to transfer stock on its books to the holder of certificates although they had been assigned to him by a person mentally incompetent. A corporation stands in the relation of a fiduciary to its stockholders and owes a duty to exercise reasonable diligence in every case where notice of any infirmity in the holder's title has been brought to it to ascertain whether or not a transfer of the stock requested is duly authorized to be made. Geyser-Marion Gold Mining Company v. Stark, 8 Cir., 106 F. 558, 53

L. R. A. 684; Mundt v. Commercial National Bank, 35 Utah 90, 99 P. 454, 136 Am. St. Rep. 1023; 18 C. J. S., Corporations, sections 435, 439; 13 Am. Jur., Corporations, sections 364, 374; Thompson on Corporations, Third Edition, volume 6, section 4344. In Leff v. N. Kaufman's Inc., 342 Pa. 342, 20 A. (2d) 786, 789, 139 A. L. R. 267, it was said:

"The duty of a corporation to make formal transfers of stock upon its books at the request of a transferee entitled to the shares is well-settled. But it is equally well established that the corporation owes a duty to its stockholders of record to protect them as well as it may from unauthorized and fraudulent transfers."

And the following from Pennsylvania Railroad Company's Appeal, 86 Pa. 80, was quoted:

"There is no doubt that a corporation is a trustee of its stockholders, and is bound to proper vigilance and care that they may not be injured by unauthorized transfers of their stock."

Mrs. Bentley's protest with nothing more to indicate any defect in the transferee's title was not sufficient to authorize the company to refuse to make the transfer, but when her letters bore evidence within themselves of a weak mentality and the company's investigation raised a serious doubt as to her mental capacity, it was justified in refusing to transfer her stock until it was established that she was legally capable of assigning it. The information in the company's possession furnished it a valid reason to refuse transfer of the stock to Mrs. Skaggs on its books and under the circumstances it was not bound to recognize her title. In Chew v. Bank of Baltimore, 14 Md. 299, the court held a corporation liable where it transferred stock which had been assigned by a person of unsound mind, though at the time of the transfer the corporation was without notice of his mental condition. We are not prepared, and it is unnecessary, to go so far, but we do hold that a corporation is justified in refusing to transfer stock of one of its stockholders where it is put on notice of his mental condition and the facts are such as to raise a reasonable doubt of his capacity to transact business. Thompson on Corporations, Third Edition, volume 5, section 4052.

We think the court erred in overruling appellant's motion to consolidate the two actions and in refusing to hear proof as to Mrs. Bentley's mental condition when the assignments were made.

The judgment in each case is reversed for further proceedings consistent herewith.