## Swaim et al. v. Martin et al.

May 24, 1946.

382

J. W. Clements for appellants.

W. S. Heidenberg and Finley F. Gibson, Jr. for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

The courts have been called upon to settle the issue
between contending groups as to who were legally elect-

ed directors of the Bank of Jeffersontown at a meeting of its stockholders held January 5, 1946. As the case reaches us, the contest is whether the circuit court rightly adjudged W. H. Martin, B. C. Burford, Earl R. Johnson and John Lang to have been elected rather than Harry L. Swaim, J. R. Shacklette, C. F. Bowles, T. T. Carwardine, B. B. Melvin or W. L. McMillan, appellants herein, who had been declared elected by the presiding officers of the stockholders meeting. The judgment eliminated Melvin and McMillan and held the first four appellants named had received the same number of votes so there should be a drawing among them to determine which three should serve as directors in addition to the four appellees. An injunction against the appellants Swaim et al. from interfering with the appellees Martin et al. as directors was granted, but suspended during the pendency of the appeal.

The present Bank of Jeffersontown is a reorganization of the Bank of Prospect, which occurred in 1941. Two and one-half shares of stock in the new bank were exchanged for three in the old and each present share was entitled to cast $1\frac{3}{4}$ votes, which fact and the system of cumulative or multiple voting (KRS 271.200) clutter up the ownership of shares and the voting with confusing fractions. We, therefore, limit our reference to the figures.

The appellants argue that the petition is fatally defective and the court committed an error in overruling their demurrer to it. We summarize the allegations generally and in the briefest manner. It is alleged that the plaintiffs were stockholders of record or otherwise had the legal right to vote for directors in person or through proxies, and had cast ballots and received a specified number of votes sufficient to elect them as directors; but the defendants, or certain named ones, had refused without right or authority to count legal and specified votes in their behalf and refused to recognize their election. It is further charged that this was done through or by a conspiracy and that the defendants, or certain named ones, had wrongfully counted ballots in their favor and had declared themselves to have been elected directors. It is alleged that the plaintiffs were and are the duly elected directors for the year and that the defendants are illegally and wrongfully retaining possession of the bank and interfering and preventing the plaintiffs from exer-

cising their rights and duties as directors. While the prayer of the petition does not specifically ask that plaintiffs be declared duly elected directors, an injunction against the defendants from acting as such and from interfering with plaintiffs as directors was asked. The prayer also contains the usual request for "all general, proper and equitable relief to which plaintiffs may appear entitled." Perhaps the petition is subject to some of the technical criticism, but under settled principles when a court of equity has taken hold of a case it may and should grant complete relief, proper and consistent with the entire proceeding. This is especially so where there is a general prayer such as contained in the present petition. Givens v. Turner, 272 Ky. 211, 113 S. W. 2d 1166; Davey Tree Expert Company v. Ackelbein, 233 Ky. 115, 25 S. W. 2d 62. A similar prayer was held sufficient to grant relief, such as was given here, in Kelly v. Mitchell, 98 Ky. 218, 32 S. W. 599, 33 S. W. 408. We think the demurrer was properly overruled.

The ultimate legal question seems to be whether the actual owners of certain shares of stock on the day of the election were entitled to vote for directors, notwithstanding irregularities or failures to observe the law and usual practices with respect to the record of the stock transfer book and to receive new certificates of stock when the shares were purchased.

The statute, KRS 271.170, requires every corporation to keep a register showing the name, address and number of shares of stock held by each stockholder and all transfers. This book is subject to inspection of all stockholders and persons doing business with the corporation. KRS 271.160 provides that every holder of stock shall be entitled to have a certificate issued by the officers of the corporation certifying the number of shares owned by him; and: "The shares of stock shall be transferred on the books of the corporation in such manner as the bylaws thereof may direct, and every person becoming a stockholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of prior stockholders."

Those whose names appear on the register as stockholders are prima facie entitled to vote the stock. 18 C. J. S., Corporations, sec. 548(d); 13 Am. Jur., Corporations, Secs. 406, 490, 636. This receives recognition in

KRS 274.030(1), a section of an Act of 1944 to which we shall presently refer, which provides that nothing in the Act shall be construed as forbidding a corporation, "To recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner."

A shareholder may rely on that record as recognition of his ownership where the issue is between himself and the bank and he shows that he was in fact the owner of the stock so registered. But one who is actually a stockholder cannot be denied his legal rights by the officers of a corporation merely because they have failed to keep the record accurately or properly. Bracken v. Nicol, 124 Ky. 628, 99 S. W. 920, 11 L. R. A., N. S., 818, 14 Ann. Cas. 896.

It appears that before the 1945 meeting of the stockholders, the then cashier of the bank, Earl R. Johnson, had acquired certain 60 shares of stock (or 61 21/24, the record not being clear), and a controversy arose whether he had done so for and on behalf of other directors and should distribute it among them, or at least transfer the stock to W. L. McMillan. As a result of this controversy Johnson was discharged as cashier on February 15, 1945. This block of stock is of controlling importance. On January 30, 1945, while he was cashier and in charge of the stock register, Johnson made a record of the transfer of these shares from himself to W. H. Martin, to whom he had sold the stock and assigned certificates by proper endorsements. New certificates were never issued to Martin and the stub book of the certificate book, of course, did not show him to be a stockholder. McMillan had filed suit against Johnson to enforce an alleged option to buy the stock which Johnson had repudiated, and had made Martin a party defendant. That suit was pending when the stockholders' meeting was held. Within an hour before that meeting the Board of Directors, which was controlled by the Swaim group, held a meeting and because, as it was said, Johnson had told the directors at some previous time, perhaps at the stockholders meeting held the year before, that he had sold the stock to McMillan, the Board of Directors declared that McMillan was the equitable owner and could vote the stock at the stockholders meeting immediately following. The Swaim group dominated that meeting and McMillan's ballot for himself and B. B. Melvin was

counted and Martin's ballot for the appellees was disregarded. We think that the statement of the situation on its face demonstrates the absence of merit in the claim that McMillan could vote the stock. Extreme as the claim is, it appears that it has been made before, for there are other cases holding that an option or executory contract for the sale of stock, or litigation concerning the same, does not deprive a person prima facie entitled to vote from doing so. 18 C. J. S., Corporations, sec. 548 (a), (b); Cook on Corporations, 6th Ed., page 1662.

The Swaim group, the appellants, seem now to concede McMillan had no right to vote it. But they have sought to justify their action in denying Martin's right to do so upon the grounds that (a) the transfer on the stock register to Martin had been fraudulently made by Johnson, and (b) in any event the stock certificate record which did not show Martin to own the stock should prevail over the transfer book.

(a) Both Johnson and Martin testified unequivocally, and are supported by some corroborating circumstances, that Martin had bought and paid for these 60 shares of stock on January 24, 1945, before Johnson, as cashier, had made the entry on the stock register. The certificate had been immediately and properly signed by endorsement and delivered to Martin. The register then showed that he owned 81 24/100 shares. It is charged with a degree of vehemence that Johnson had "juggled" the registry of this stock (or 58 21/24 shares). We do not so regard the entries showing transfer from himself to Martin. It appears that there was another certificate of 3 5/6 shares for which no entry was then made and this is pointed to with suspicion. That record had continued until the stockholders meeting. The register with this entry had been in the possession of appellants since Johnson's resignation, eleven months before. The irregularity consisted in failing to cancel the old and issue new certificates to Martin. Sometime in February, 1945, Martin had gone to the bank to inquire concerning his status or the record of his ownership. He found bank examiners present and inquired of them concerning his stock. After an examination of the records he was told that the stock belonged to him, and he did not worry any more about the matter. The examiners had found Johnson's records to be satisfactory. The State Examiner testified that he and a

Federal examiner had checked the register with the stubs of the certificate book in the presence of Dr. Shacklette, a vice president and one of the appellants, and had answered Martin's inquiry. He had produced and exhibited his certificates of stock and they had examined and found them to be properly assigned and to correspond with the stock register, although new certificates had never been issued. Under the law, he could have compelled transfer on the register. KRS 274.010; Citizens' Bank of Shelbyville v. Mutual Trust & Deposit Company, 206 Ky. 86, 266 S. W. 875, 40 A. L. R. 1001.

As respects the 60 shares involved, Martin had the right to rely upon that record and the assurances that he was in fact a stockholder. Bracken v. Nicol, supra, 124 Ky. 628, 99 S. W. 920, 11 L. R. A., N. S., 818, 14 Ann. Cas. 896; 13 Am. Jur., Corporations, Sec. 409. The officers of the corporation, some of whom are seeking to have the courts deny his right, of course had knowledge of the record, and at least the Vice President had actual knowledge of Martin's possession of certificates bearing assignments by the former stockholders to whom they had been issued, and his claim of ownership, which are important facts.

(b) It was contended by the appellants that the by-laws of this banking corporation provided that the certificate book should prevail. An attempt was made to prove orally the adoption of an amendment to its by-laws on December 10, 1945, so providing. We concur with the chancellor that they failed to do so. But it seems immaterial. KRS 271.160 gives the right to a purchaser of stock to receive a certificate as authentic evidence or a symbol of his ownership and interest in the corporation. Commonwealth v. Peebles, 134 Ky. 121, 119 S. W. 774, 23 L. R. A., N. S., 1130, 20 Ann. Cas. 724; Sargent v. Whitfield, 226 Ky. 754, 11 S. W. 2d 926. A failure to issue that muniment of title cannot affect the stockholder's right as between himself and the corporation where its officers have knowledge of the facts.

In 1944 the General Assembly enacted the Uniform Stock Transfer Act, KRS 274.010 et seq., which nullifies some of our earlier cases. The Act makes its provisions applicable regardless of the fact that the by-laws of a corporation may provide that its shares represented by certificates shall be transferable only on the books

of the corporation or shall be registered by a registrar or transferred by a transfer agent. KRS 274.010. That Act throughout declares that the holder in good faith of a certificate of stock which has been assigned and delivered to him takes title thereto and succeeds to the rights of the transferer. KRS 274.040, 274.050, 274.060. In some cases such right may be recognized and enforced even without delivery of the certificate. KRS 274.100. It "gives a character of negotiability to a stock certificate." 13 Am. Jur., Corporations, Sec. 345. Compare Will's Adm'r v. George Weidemann Brewing Company, 171 Ky. 681, 188 S. W. 778, Ann. Cas. 1918E, 62, rendered long prior to the enactment.

Therefore, Martin had legal title to the shares in question and that had been shown on the Bank's stock register for practically a year. We find no merit in the appellants' claim that he had no right to vote that stock; hence the chancellor was correct in his decision concerning this question.

The stock book bore the registry of 5 shares in the name of Albert M. Bottorf, and 2½ shares in the name of Mrs. Louise Trigg. The appellants had voted this stock for their side by proxies. The appellees had proxies also and undertook to vote them for their side. The court held the appellees to have the later proxies and entitled to vote them; hence that that number of votes should be deducted from the one side and added to the other. Doing this, and adding the Martin controverted stock above described, gave the appellees a majority and entitled them to become directors of the corporation.

The Bottorf stock had been sold about a year before to Paul Johnson. His certificate was assigned and delivered at the time. Notwithstanding this fact, Bottorf had afterward, on December 6, 1945, signed and given a blank proxy to Mr. Swaim, president of the bank, who told him that his stock had not been transferred on the books and it was necessary that he sign the proxy in order that it might be voted. Bottorf had also advised Kute, the bank's cashier, who is one of the appellants, that he had sold the stock. He had refused to give a proxy to his transferee, Johnson. Mr. Finley Gibson, attorney for Johnson, presented the assigned certificate to Kute, and requested its transfer on December 11, 1945. Kute declined, saying that he could not do

so without the approval of the directors. Nothing else was done in the matter. Thus it is shown that the bank's officers, charged with making a proper register, were put on notice of the sale and were presented with the assigned certificate, but declined to make a record thereof on the stock register. It was their duty to do so. Kentucky Utilities Company v. Skaggs, 293 Ky. 622, 169 S. W. 2d 809. They might have been compelled to do it. Mutual Telephone Company v. Jarrell, 220 Ky. 551, 295 S. W. 865. Johnson had given a proxy for his stock and the holder had cast this ballot for the appellees, but it was disregarded by the tellers at the election, who counted the ballot cast under Bottorf's proxy. A proxy creates an agency with power to vote, and a person who has ceased to be a stockholder may not appoint such an agent. 18 C. J. S., Corporations, sec. 550. Therefore, Bottorf's proxy was void so far as he and those having notice of the facts were concerned although the stock was registered in his name. Cook on Corporations, Vol. 2, page 1662. It has been said that the registry of stock is for the protection of the corporation, and so far as it is concerned an assignment or transfer of certificates of stock is not effected until its records reflect that fact, although it is good between the parties. York's Ancillary Administrator v. Bromley, 286 Ky. 533, 151 S. W. 2d 28. But, as we have said, registry is only a prima facie evidence of the fact. "One may be a stockholder even though not recorded as such on the books of the corporation." 18 C. J. S., Corporations, sec. 478(c). The burden is on such a one, however, to establish his title, and if officers of the corporation whose duty it was to have made an entry on the transfer book failed to do so upon request, or with knowledge of the facts, they and the corporation will be estopped to question it. The right of voting at a corporate meeting is an incident of ownership, and in the absence of a statute or agreement the right to vote the stock, as between the corporation and the person endeavoring to vote, it follows the legal title. 13 Am. Jur., Corporations, Secs. 485, 490. Ordinarily, one who does not appear to be a stockholder upon the books of the corporation is not eligible to vote although he has title, and there is nothing in the Uniform Stock Transfer Act to the contrary. 13 Am. Jur., Corporations, Sec. 490. But all the parties concerned with the matter in this case knew that the record of Bottorf as a stockholder was not correct. It is claimed by the

appellants that Johnson is estopped to deny the voting of this stock by Bottorf because he had allowed it to stand on the books of the corporation in his name for nearly a year after he had bought it and had not tried to coerce the Bank's officers to make the transfer or issue him a new certificate. The case relied upon by the appellants, Lincoln Court Realty Company v. Kentucky Title Savings Bank & Trust Company, 169 Ky. 840, 185 S. W. 156, is distinguishable in that the parties adversely affected in that case had relied upon the information disclosed by the stock transfer book. The estoppel works the other way around in the present case. The appellants failed to perform a duty and cannot because of their own failure be heard to say that the other party is estopped. A person cannot gain an advantage by reason of his own dereliction or because he declined to do what he ought to have done. That is fundamental in the law of estoppel.

The stock registry showed 2½ shares owned by Mrs. Louise W. Trigg. It appears that she held a certificate for 3 shares in the original Bank of Prospect in her own name, although she testified it had belonged to her husband, who died in 1938. After the merger and reorganization under the name of Bank of Jeffersontown, Mrs. Trigg requested that the stock in the corporation be transferred to her. The certificate was made out by Earl Johnson, then cashier, on October 31, 1941, but in the name of her deceased husband, whose name appears to have been on the records of the Bank of Prospect. This new certificate was thereafter held or kept by the bank and never delivered to Mrs. Trigg, although her name showed on the register as owning it. She had received notices and requests for proxies thereafter in her own name. In November, 1945, Mr. Bowles had sought to buy her stock, but she had already promised to sell it to Paul Johnson and declined his offer. However, at his request she gave Bowles a proxy. In December, 1945, she sold the stock to Johnson and on December 12th wrote the Bank advising it of that fact and requesting that a certificate be issued to Johnson. In this letter she expressly canceled the proxy given Bowles. But the proxy showed up at the meeting bearing the date of it, January 5, 1946, and was voted for the appellants by Bowles. The appellant Kute, who was one of the tellers at the election, testified that he had counted it because

he had forgotten about Mrs. Trigg's letter. No certifi- cate was ever made out to Johnson, the transferee, and no transfer was made on the register. The appellants concede that they are not entitled to receive the votes represented by this stock. They deny any right of the other side to receive them, as the court held they were entitled to. In respect to this stock, we have the prima facie evidence of Mrs. Trigg as a stockholder, with her certificate held by the bank without delivery; her bona fide sale to Johnson; and her request that transfer be made and certificate issued to him, which was not done by the officers of the bank. The rules of estoppel made applicable to the Bottorf stock are applicable to this. The court's ruling was correct.

The counting by the tellers of the votes of a few other shares for the appellants is also questioned. But it does not seem necessary to consider them, for adding the three blocks of stock which we have considered to the votes received by the appellees, Martin, Johnson and Burford, and deducting the Bottorf and Trigg stock from the votes counted for the appellants, Swaim, Shacklette, Bowles and Carwardine (the Martin stock had been cast for McMillan and Melvin as stated), the result is that the appellees, Martin, Johnson and Burford, were elected and the court correctly so adjudged.

Wherefore, the judgment is affirmed.